UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ARVEL SKAGGS, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| vs. | ) ) | Case No. 4:17 CV 2914 ACL |
| NANCY A. BERRYHILL,<br>Deputy Commissioner of Operations,<br>Social Security Administration, | ) ) ) ) ) |  |
| Defendant. | ) |  |

## **MEMORANDUM**

Plaintiff Arvel Skaggs brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Skaggs' severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Skaggs filed his applications for DIB and SSI on June 23, 2014, claiming that he became

unable to work on September 30, 2009.[1] (Tr. 290-302.) In his Disability Report, Skaggs alleged disability due to diabetes, "crippled right arm/hand," lower degenerative disc problems, upper degenerative disc problems, left shoulder problems, left ankle problems, and neuropathy. (Tr. 333.) Skaggs was 39 years of age at the time of his alleged onset of disability. (Tr. 329.) His applications were denied initially. (Tr. 166-76.) Following two administrative hearings, Skaggs' claims were denied in a written opinion by an ALJ, dated February 1, 2017. (Tr. 15-27.) Skaggs then filed a request for review of the ALJ's decision with the Appeals Council, which was denied on October 26, 2017. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Skaggs first argues that the ALJ "failed to properly evaluate RFC." (Doc. 18 at 3.) He next argues that the ALJ "failed to properly evaluate opinion evidence." *Id.* at 13.

## II. The ALJ's Determination

The ALJ first found that Skaggs met the insured status requirements of the Social Security Act through March 31, 2014. (Tr. 17.) He found that Skaggs had not engaged in substantial gainful activity since March 27, 2014, the amended alleged onset date. *Id.* In addition, the ALJ concluded that Skaggs had the following severe impairments: degenerative joint disease of the left shoulder; degenerative disc disease of the lumbar spine; cervical spine dysfunction; degenerative joint disease of the left ankle with history of fracture and open reduction internal fixation (ORIF) surgery and hardware removal; diabetes with neuropathy; and non-union of the right ulnar fracture (20 CFR §§ 404.1520(c) and 416.920(c)). *Id.* The ALJ found that Skaggs did not have an

---

[1]Skaggs subsequently amended his alleged onset of disability date to March 27, 2014. (Tr. 15, 38-39.)

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 19.)

As to Skaggs's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform occasional lifting up to 20 pounds and frequent lifting/carrying 10 pounds; standing or walking 2 hours out of an 8-hour workday one hour at a time with total ambulation no more than 3-4 hours in an 8-hour workday and sitting 6 hours out of an 8 hour workday. The claimant requires a sit/stand option allowing change in position every 30 to 60 minutes for a few minutes at a time while remaining at the work station with no loss in production. The claimant could perform work that does not require climbing on ropes, ladders or scaffolds and no more than occasional climbing on ramps, stairs, stooping, kneeling, crouching or crawling, and should avoid concentrated exposure to extreme heat and cold, humidity, wetness, and work hazards such as unprotected heights and being around dangerous moving machinery. The claimant should have no exposure to vibration and no reaching overhead with the left non-dominant hand. The claimant can frequently reach with the right hand. The claimant could perform work that does not require operation of foot controls with the left lower extremity. The claimant requires use of a cane to ambulate.

(Tr. 20-21.)

The ALJ found that Skaggs was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as charge account clerk, order clerk food/beverage, and surveillance system monitor. (Tr. 25-26.) The ALJ therefore concluded that Skaggs was not under a disability, as defined in the Social Security Act, from March 27, 2014, through the date of the decision. (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on June 23, 2014, the claimant is not

disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on June 23, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

     5.     Any corroboration by third parties of the plaintiff's impairments.

     6.     The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work

which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his

age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the

Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Skaggs argues that the ALJ erred in evaluating the opinion evidence and determining Skaggs' RFC. Specifically, Skaggs contends that the ALJ improperly relied on the medical expert's opinion and discredited the opinion of his treating physician. Skaggs further argues that the ALJ improperly relied on the vocational expert's testimony in finding him not disabled, because the hypothetical posed to the expert was based on the improperly assessed RFC.

RFC is what a claimant can do despite his limitations, and it must be based upon all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932

(8th Cir. 2016).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Skaggs claims that the ALJ improperly based her decision on the opinion of medical expert Louis Fuchs, M.D. At the end of the first administrative hearing held on April 13, 2016, the ALJ found that additional medical evidence was necessary concerning functional limitations from

Skaggs' orthopedic problems. (Tr. 109.) The ALJ noted that the opinion of treating physician Dr. Doumit pre-dated some of Skaggs' orthopedic problems. (Tr. 110.) To address this issue, the ALJ asked medical expert Dr. Fuchs, a board certified orthopaedic surgeon, to review the record and express an opinion regarding Skaggs' RFC. (Tr. 941.)

Dr. Fuchs completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on May 20, 2016. (Tr.944-49.) He expressed the opinion that Skaggs could continuously lift or carry up to ten pounds, and occasionally lift or carry up to twenty pounds; sit for two hours at a time and sit a total of eight hours in an eight-hour workday; stand for one hour at a time, and stand a total of two hours in an eight-hour workday; walk one hour at a time and walk a total of two hours in an eight-hour workday; can be ambulatory for a total of three hours in an eight-hour workday; can never reach overhead with his left hand; can frequently reach overhead with his right hand; can never operate foot controls with his left foot; can never climb ladders or scaffolds; can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; can never be exposed to vibrations; can occasionally be exposed to humidity and extreme temperatures; and can frequently operate a motor vehicle. *Id.*

In a letter to the ALJ dated June 6, 2016, Skaggs, through counsel, expressed his disagreement with Dr. Fuchs' opinions. (Tr. 414.) He objected to Dr. Fuchs' finding that Skaggs does not require a cane and has an effective gait. *Id.* Skaggs stated that his use of a wheelchair or a cane affects his gait in a manner that shows he meets a listing. *Id.*

The ALJ held a supplemental hearing on November 7, 2016, based on Skaggs' objections to Dr. Fuchs' opinions. At the supplemental hearing, Skaggs and the ALJ questioned Dr. Fuchs extensively regarding his findings. Skaggs was using a wheelchair during the hearing. (Tr. 46.) Dr. Fuchs' relevant testimony is summarized as follows:

- 2016 imaging of the left shoulder revealed a progression in arthritic changes since previous imaging. (Tr. 45.)  However, no significant limitations of motion or decreases in strength were reflected on physical examinations.  (Tr. 45.)

- Skaggs' ankle impairment did not meet Listing 1.02A because his gait was still effective.  (Tr. 45-46.)  Dr. Fuchs' opinion would change if Skaggs had marked limitations in his gait.  *Id.*

- He did not consider whether Skaggs' nonunion of the right ulnar fracture met Listing 1.07 because physical examinations did not show the required deficits of the upper extremity.  (Tr. 45.)

- The record does not substantiate the need for a wheelchair, although use of a cane would be reasonable.  (Tr. 47, 50.)

- Skaggs may have had the need for a walker for short periods following his ankle surgeries.  (Tr. 50.)

- Treatment notes reflect that Skaggs was holding his cane in his left hand, whereas he should be holding it in the right hand to ambulate effectively due to his left ankle injury.  (Tr. 54.)  An inability to use the right hand would restrict the effectiveness of the cane.  *Id.*

- The record does not show impairments in the wrist and hand due to the nonunion of the ulnar fracture that would preclude effective use of the right hand.  (Tr. 55.)

- The progression in degenerative changes in the cervical spine noted in a 2016 MRI is consistent with aging, and would not result in any further restrictions of

the upper body or any difficulty in Skaggs' ability to use a cane. (Tr. 53.)

The ALJ accorded "great weight" to Dr. Fuchs' opinion regarding Skaggs' RFC. (Tr. 24.) The ALJ explained that Dr. Fuchs' findings were "based upon the objective medical evidence and confirmed at the hearing." *Id.* She noted that Dr. Fuchs did not find that Skaggs' gait met or equaled Listing 1.02. *Id.*

The ALJ in turn assigned "little weight" to the opinion of treating physician Dr. Doumit. (Tr. 24.) Dr. Doumit assessed Skaggs' Residual Functional Capacity Questionnaire in two separate questionnaires. In the first questionnaire, completed on November 6, 2013, he expressed the opinion that Skaggs could frequently lift and carry less than ten pounds and occasionally lift and carry ten pounds; could use his right hand for grasping, fine manipulation, and reaching only ten percent of the workday; could sit sixty minutes at a time and sit a total of four hours in an eight-hour workday; stand or walk for fifteen minutes at a time, and stand or walk a total of one hour in an eight-hour workday; must be able to shift positions at will from sitting, standing, or walking; requires unscheduled fifteen-minutes breaks every one to two hours; and would be absent from work more than four times a month. (Tr. 435-37.) Dr. Doumit indicated that he first treated Skaggs in 2009, and that Skaggs had the referenced limitations since that year. (Tr. 436.) Dr. Doumit completed a second questionnaire on March 12, 2014, in which he stated he had treated Skaggs "every three weeks" since July 2007, and that his opinion applied to that entire period. (Tr. 446, 452.) Dr. Doumit expressed the opinion that Skaggs could not stand or sit for even a full hour in a workday, and that Skaggs' symptoms would "constantly" interfere with his attention and concentration. (Tr. 448, 451.)

The ALJ found that Dr. Doumit's opinions were "too extreme given the medical evidence of record." (Tr. 24.) She also cited Dr. Fuchs' testimony that the objective evidence does not

support these extreme limitations.  *Id.*

The ALJ next discussed the opinion of Jeremy Talley, D.O., who stated that Skaggs' gait was unstable and that Skaggs required a wheeled walker in June 2015.  (Tr. 24, 742.)  The ALJ explained that this statement was authored after Skaggs' ankle hardware removal surgery and was therefore a temporary restriction.  *Id.*

Finally, the ALJ accorded "little weight" to the October 2014 finding of the Missouri Department of Social Services that Skaggs was permanently and totally disabled for the purpose of MO HealthNet eligibility.  (Tr. 24, 379.)  The ALJ accurately pointed out that the ultimate issue of disability is one left to the Commissioner, and that SSA rules differ from MO HealthNet rules. (Tr. 24.)  *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (ALJ "is not bound by the disability rating of another agency when [s]he is evaluating whether the claimant is disabled for purposes of social security benefits").

The undersigned finds that the ALJ properly weighed the medical opinion evidence.  As an initial matter, both of Dr. Doumit's opinion statements were authored before Skaggs broke his ankle, which was the basis for Skaggs' onset of disability date in the instant matter.  The ALJ and Skaggs' attorney discussed this fact at the hearing.  (Tr. 38-40, 78-79, 97-99.)  The ALJ found that the extreme limitations provided by Dr. Doumit prior to the relevant time period were not supported by the medical evidence.  Dr. Fuchs similarly found that Dr. Doumit's opinions were not supported by the record.

In support of his opinions, Dr. Fuchs cited specific physical findings on examination in the medical record.  For example, as to Skaggs' right ulnar fracture, Dr. Fuchs cited the March 2015 findings of pain management physician Suresh Krishman, M.D., that Skaggs' upper extremity examination was normal and his sensation was intact.  (Tr. 46, 584.)  He also noted that a

neurological examination performed by Stanley Martin, M.D. on March 17, 2015 was normal. (Tr. 574.) Dr. Martin stated that the etiology of Skaggs' upper extremity pain was unclear, and recommended conservative treatment, including physical therapy. *Id.*

With regard to Skaggs' ability to ambulate, Dr. Fuchs noted that Dr. Helfrey's April 2016 examination revealed good reflexes and range of motion of the ankle. (Tr. 47, 963.) He also cited findings of an emergency room physician on July 1, 2014. (Tr. 47, 516.) Skaggs presented due to twisting his left ankle three months following surgery. (Tr. 516.) On examination, swelling and tenderness of a portion of his left ankle were noted, but his neurovascular exam was intact, his motor strength was good, and he had no sensory deficit. (Tr. 48, 516.) Dr. Fuchs noted findings from another emergency room visit for left ankle pain on July 28, 2014, at which time Skaggs' weight bearing was tender but intact, and his coordination and gait were "normal." (Tr. 48, 561.) Dr. Fuchs acknowledged that Skaggs' may have limitations resulting from his ankle impairment, but stated that he did not "find notations substantiating" that Skaggs is "wheelchair bound." (Tr. 47.)

"[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." *Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th Cir. 2013) (quoting *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010)). When evaluating a non-examining source's opinion, the degree to which the opinion considers all of the pertinent evidence in the claim must be considered. *Wildman*, 596 F.3d at 967. "[B]ecause nonexamining sources have no examining or treating relationship..., the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *Papesh*, 786 F.3d at 1133 (quoting 20 C.F.R. § 404.1527(c)(3)). "The better an explanation a source provides for an

opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Upon review of the record and the ALJ's decision, the Court finds that the ALJ evaluated all of the evidence of record and provided "good reasons" for the weight she accorded Dr. Doumit's and Dr. Fuchs' opinions. Specifically, Dr. Fuchs' opinions were based on his evaluation of the medical evidence during the relevant period, whereas Dr. Doumit's opinion pre-dated the relevant period and was unduly restrictive. Because substantial evidence on the record as a whole supports the ALJ's determination to discredit Dr. Doumit's opinion and assign great weight to Dr. Fuchs' opinion, the Court will not disturb that determination.

The ALJ considered all of the evidence in the record, including Skaggs' testimony regarding his symptoms. The ALJ found that some of Skaggs' statements about the limiting effects of his symptoms, such as his need for a wheelchair, were inconsistent with the record. Moreover, the ALJ properly considered evidence that Skaggs was not compliant with his diabetes medication protocol, which affected his treatment options regarding his left ankle impairment. (Tr. 21-23, 84.) Additionally, physical therapy notes revealed that Skaggs was not compliant with his home exercise program. (Tr. 1055.) Treatment notes also indicated that Skaggs had achieved significant pain relief with medications and physical therapy. (Tr. 22-23, 970, 1055.) It is well-settled that "[a] failure to follow a recommended course of treatment also weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citation omitted). Moreover, an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability." *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014).

Based on the foregoing, the Court concludes that the record contained substantial evidence to support the ALJ's RFC assessment. The ALJ found Skaggs was significantly limited due to his

combination of impairments. Notably, the ALJ found Skaggs requires a sit/stand option and the use of a cane, in addition to a multitude of exertional and environmental limitations. The ALJ then determined, consistent with the testimony of a vocational expert, that Skaggs could perform the positions of charge account clerk, order clerk food/beverage, and surveillance system monitor. (Tr. 25-26.)

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Skaggs articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2019.